# Dougherty et al., Appellant, v. Black, State Highway Commissioner of Commonwealth of Pennsylvania.

*Roads and streets—State highways—Boroughs—Repair Act of May 31, 1911, P. L. 468, Sec. 10—Petition for mandamus—Refusal.*

1. There is nothing in the State Highway Act of May 31, 1911, P. L. 468, which relieves boroughs from the maintenance of highways or roads within their limits, except in cases where the State highway commissioner, with the consent of the borough, has reconstructed a borough street forming part of a State highway, in which case, the borough and the State highway commissioner maintain the road jointly thereafter as provided by section ten of the act.

2. A mandamus to compel the State highway commissioner to maintain a borough street forming part of a State highway is properly refused where the State highway commissioner has not elected to reconstruct such portion of the highway as runs through the borough, as provided by Section 10 of the Act of May 3, 1911, P. L. 468.

3. It is discretionary with the State highway commissioner whether or not he shall take over and maintain jointly with a borough a portion of a State highway running through a borough.

Argued May 27, 1918. Appeal, No. 12, May T., 1918, by petitioner, from order of C. P. Dauphin Co., Com. Docket, 1917, No. 5, refusing mandamus, in case of C. B. Dougherty, R. P. Funkhouser, J. W. McDonnell, Edgar C. Tawney, J. E. Swift, Martin Winter, H. D. Geiselman, Calvin Gilbert, H. S. Trostle, constituting the Town Council of the Borough of Gettysburg, v. Frank B. Black, State Highway Commissioner of the Commonwealth of Pennsylvania. Before Brown, C. J., Moschzisker, Frazer, Walling and Simpson, JJ. Affirmed.

Petition for mandamus to compel repair and maintenance of road.

The facts appear in the following opinion of Kunkel, P. J., refusing the petition:

The relevant facts in this case have been agreed upon

by the parties and are contained in the petition and return. They are as follows: The State Highway Commissioner acquired the turnpike road, on behalf of the Commonwealth, from the Gettysburg & Petersburg Turnpike Road Company. The road ran through the Borough of Gettysburg and within its limits constituted the streets respecting the maintenance of which this controversy has arisen. Portions of the road were designated as State highways in routes Nos. 42 and 43 in the Act of May 31, 1911, P. L. 468. The streets are in unsafe condition and in need of repair. This proceeding has been brought by the town council of the borough against the State highway commissioner for the purpose of compelling him to repair and maintain them.

Before the State highway commissioner may be directed to perform this duty, it must clearly appear that it has been imposed upon him. Every duty touching the improvement, maintenance and repair of highways that rests upon him is to be found in the Act of May 31, 1911, which established the State Highway Department. That act defines his powers and duties. It also declares that certain roads, turnpike roads and highways described therein shall be known, marked, built, rebuilt, constructed, repaired and maintained at the sole expense of the Commonwealth, shall constitute a system of State highways and shall be under the exclusive authority and jurisdiction of the State Highway Department. The present turnpike road acquired by the Commonwealth is included in part in the system and is particularly described in the act as follows: "Route 42. From Gettysburg to the Maryland State line—Commencing in Gettysburg and running by way of Littlestown to the Maryland State line." "Route 43. From Gettysburg to Chambersburg commencing in Gettysburg, thence running by way of McKnightstown and Cashtown to a point on the dividing line between Adams and Franklin Counties, thence by way of Fayetteville into Chambersburg, Franklin County."

It will be observed that the public roads designated in the several routes numbered in the act are those which run between principal cities, boroughs and towns. It will be observed further that the highway commissioner is authorized to take the roads over from the counties and townships for their improvement, maintenance and repair at the expense of the Commonwealth, and for the relief of the townships or counties from any further obligation or expense for their maintenance or repair and from authority over them. In other words, the general purpose of the act was to authorize the State Highway Department to take over the roads named in the several designated routes and to improve, maintain and repair them at the sole expense of the Commonwealth in relief of the townships and counties. There does not appear to be anything in the act relieving boroughs from the maintenance of highways or roads within their limits, except so far as specific provision is made therefor in Section ten of the act, to which we will shortly refer. Section nine authorizes the highway commissioner to acquire, either by purchase or by condemnation proceedings, any turnpike road owned or controlled by a turnpike company or other private corporation, where the whole or any part of such road or route forms all or any portion of a State highway as described and defined in the act. It was under this provision that the highway commissioner acquired the turnpike in this case. The fact, however, that such turnpike road ran through the borough and the streets thereof constituted part of the turnpike, cannot we think be held a sufficient reason for imposing upon the State Highway Department the duty of repairing and maintaining the streets, especially in view of section ten of the act which expressly provides that "anything herein contained, or any apportionment of the State into highway districts, shall not be constructed as including or in any manner interfering with the roads, streets, and highways in any of the cities, boroughs, or incorporated towns of the Commonwealth." This re-

striction is modified only by the proviso which permits the State High'way Department with the consent of the borough or town councils to improve or reconstruct, according to the standards of the State Highway Department and at the expense of the Commonwealth any street or highway in a borough forming part or section of any State highway and not already improved or reconstructed according to the standards of the department. The conditions upon which the State highway commissioner may act are set forth, and provision is made for the joint maintenance thereafter of such road by the borough and State highway commissioner; but the power to take over the road is a discretionary power which the courts cannot control. Apart from this provision for the acquisition and control for the purpose of maintenance of roads and highways within boroughs, we can find no duty imposed by the act upon the State highway commissioner to maintain and repair borough streets and highways. On the other hand, as we have said, the act expressly provides that nothing therein shall be construed to authorize any interference by the highway commissioner with streets and highways in boroughs.

There being no duty imposed upon the State highway commissioner by the Act of 1911 to repair and maintain the streets in question, this proceeding must be dismissed. The doctrine is well settled, that to enforce the performance of a duty by a public official the duty must clearly appear.

Accordingly the writ of peremptory mandamus is refused and the proceedings dismissed at the cost of the plaintiff.

The court refused the petition for mandamus. Petitioner appealed.

*Error assigned* was the order of the court.

*Wm. Arch McClean,* for appellant.

*William H. Keller,* First Deputy Attorney General, and *Francis Shunk Brown,* Attorney General, for appellee.

PER CURIAM, July 17, 1918:

This appeal is dismissed, at appellant's costs, on the opinion of the learned court below refusing the writ of mandamus.