Commonwealth, ex rel., v. Bebbington et al.

*Willard S. Curtin,* for plaintiff.

*Van Artsdalen & Biester,* for defendants.

*Opinion and Decree of Court.*

BOYER, J., July 22, 1935.—This matter came up for argument before the court in banc on petition and answer, by agreement of counsel. The material facts are admitted in the answer so that the matter now comes before the court solely as a question of law. The petition sets forth that the central portion of Main Street, in the Borough of Yardley, which is occupied by a street railway under two franchises granted by the borough, is out of repair so as to make travel thereon difficult and dangerous; that the owners of the railway have ceased to operate the same; that the duty of making repairs to said portion of Main Street occupied by the railway tracks is upon the defendant borough; that the borough council has neglected and refused to make said repairs; and that said Main Street is named as part of the State highway system in the Act of June 1, 1933, P. L. 1172. Upon this petition an alternative writ of mandamus was awarded requiring the defendant borough council to repair and maintain the said street or show cause why it should not do so. To this mandamus the defendant filed an answer admitting the material facts averred in the bill and averring that under the law it is the duty of the State highway department to repair and maintain said street and that therefore the defendant has no right or authority to expend borough funds for such repair and maintenance. The petition and answer, therefore, raise the single question as to the liability of the borough, under the law, for said repairs and maintenance.

The determination of the liability of the borough to a

decree for repair and maintenance depends on several subsiduary questions raised by counsel for the respective parties. First, is the maintenance, by the State highway department, of a borough street designated in the Act of June 1, 1933, P. L. 1172, as a State highway, discretionary with the department of highways? Second, if not, does the existence of railway tracks in the middle portion of such street, under a franchise granted by the borough, relieve the highway department from the duty of maintenance generally? Third, if not, do such railway facilities in the middle of the street relieve the highway department from responsibility for maintaining the central portion of the street so occupied?

As the answers to these questions depend largely upon the statutory enactments relating to State highways, it is necessary that we review the material portion of this legislation. The Act of May 31, 1911, P. L. 468, commonly known as the Sproul Act, was the original act creating the State highway system. Section 10 of that act, at page 516, provides that under certain conditions streets within boroughs may be taken over and improved by the State Highway Commissioner with the consent of the borough and contains this proviso: "And provided further, That any such road, street, or highway, or any part or parts thereof, forming a State Highway within the limits of any borough or incorporated town, shall only be taken over, at the discretion of the State Highway Commissioner, for reconstruction and maintenance by the State Highway Department, when the failure to so take over such road, street, or highway would leave an unimproved gap in a continuous improved State Highway." The important provision of this section for our purpose is, that the taking over of such highway was at the discretion of the State highway department: Dougherty et al. v. Black, 262 Pa. 230.

Another important provision of that act is the latter portion of section 5, at page 472, which is as follows:

"And be it further provided, That where an agreement

or contract exists between any street railway company, or other firm or corporation, and any county, township, or borough, the terms of which require said street railway company, or other firm or corporation, to maintain any highway which is designated under this act as a State Highway, the said agreement shall remain in force, and the State shall succeed to and take over to itself all the rights of said county, township, or borough existing under said agreement or contract. The said street railway company, or other firm or corporation, shall be bound to carry out all of the requirements, and comply with all the terms and conditions, of said agreement with the State, the same as though the said contract or agreement had been originally made between the State and said street railway company or other firm or corporation."

Section 10 was thereafter frequently amended, an important amendment, for our purpose, being the Act of May 18, 1923, P. L. 252, which permitted the taking over of highways within boroughs without the consent of the boroughs, but still leaving it in the discretion of the State highway commissioner. This section was again amended by the Act of May 16, 1929, P. L. 1775, so as to place the entire cost of constructing and maintaining streets in boroughs forming part of a State highway upon the Department of Highways, and eliminating all discretion therein on the part of the State highway department.

Section 10 was finally amended by the Act of June 1, 1933, P. L. 1402, the important provision therein being as follows:

"Provided, That where any road, street, or highway shall form a part or section of any State highway, as now or hereafter established, within the limits of any borough or incorporated town, the Department of Highways shall improve or reconstruct any section or sections of such road, street, or highway which have heretofore been maintained or are hereafter established as State highways to be maintained by the Department of Highways,

to such width as it may deem advisable, at the expense of the Commonwealth . . . The maintenance of any road, street, or highway which forms a part or section of any State highway, as now or hereafter established, within the limits of any borough or incorporated town, shall be done by the Department of Highways at the expense of the Commonwealth: Provided, That all improvements, reconstruction, and maintenance of any road, street, or highway in boroughs or incorporated towns shall be of such width and type as may be determined by the Secretary of Highways."

The legislation under which this question directly arises is the Act of June 1, 1933, P. L. 1172, entitled: "An act establishing certain streets in boroughs and incorporated towns as State highways, and providing for their construction and maintenance at the expense of the Commonwealth."

Section 1 of this act is as follows:

"Be it enacted, &c., That the following streets in boroughs or incorporated towns shall, respectively, be adopted as State highways, to be constructed and maintained at the expense of the Commonwealth under the provisions of present or future laws governing State highways in boroughs."

The first portion of section 2 is as follows: "The streets taken over under the authority of this act are situate and described, as follows": describing, inter alia, at page 1201, Main Street in Yardley Borough. A long list of streets in various boroughs taken over as State highways is followed by the last two sections at page 1347, as follows: "Section 3. The cost and expense of the maintenance, construction, and improvement of the highways herein described shall be paid out of any moneys appropriated to the Department of Highways for the maintenance, construction, or improvement of State highways.

"Section 4. This act shall become effective upon its approval by the Governor. The streets established as State highways under the provisions of this act may be

taken over for construction and maintenance at any time subsequent to the approval of this act, but shall be taken over not later than the fifteenth day of August, one thousand nine hundred thirty-three."

The State highway department is not a party to this suit. Its counsel, prior to argument, stated at the bar of the court that it would ask leave to intervene as a party plaintiff, but failed to do so. Therefore, we do not have the State's position or contention in the matter, of record, nor the benefits of any brief or argument of its counsel. Copies of letters from counsel for the Secretary of Highways were attached to defendant's brief, informally stating their contention and view of the law.

Plaintiff's counsel contend that the taking over of Main Street by the State highway department is not mandatory, but is entirely within the discretion of the department and that, until the department elects to take over this street as a State highway, the borough remains responsible for its maintenance. With this view we cannot agree. Section 10 of the Act of May 31, 1911, P. L. 468, originally gave such discretion to the highway department, but this section was amended from time to time, the legislature making it clearer by each successive amendment that the Department of Highways was not to have any discretion as to taking over such highways in boroughs. The latest amendment, June 1, 1933, P. L. 1402, in part above recited, is as positive and mandatory as the English language could well make it. However, even though there should be any room for doubt as to the meaning of the provisions of that act, this case falls directly within the provisions of the other act of the same date, P. L. 1172. This act is even more mandatory and unequivocal in its provisions than the amendment of the general act just referred to. It is entitled: "An act establishing certain streets . . . as State highways". Section 1 provides that the streets "shall, respectively, be adopted as State highways". Section 2 recites streets in boroughs in almost every county in the State as "taken

over under the authority of this act". The act concludes by providing that the expense of the maintenance and construction "shall be paid out of any moneys appropriated to the Department of Highways". Section 4 provides that "The streets established as State highways" may be taken over for maintenance at any time after the approval of the act, "but shall be taken over not later than the fifteenth day of August, one thousand nine hundred thirty-three."

This act does not provide for any particular action or formality constituting "a taking over" by the Department of Highways. The clear meaning of the last section just referred to is that the State highway department may begin work upon such maintenance of borough streets immediately after the approval of the act, but must assume responsibility for their maintenance not later than August 15, 1933. This provision makes the act self-operative so as to transfer the authority and jurisdiction for repairs from the boroughs to the State on August 15, 1933. There could not be the slightest excuse for the courts entertaining any doubt as to the meaning of the clear, positive and unequivocal language of this act, placing the streets named in it under the jurisdiction of the State highway department for maintenance and repair.

We understand that it is the contention of the State highway department in this case that it is relieved from the maintenance of this street by reason of the fact that an abandoned street railway track is laid and remains in the center of the street for its entire length under specific contracts or franchises granted by the Borough of Yardley to the corporations that originally laid the same. We do not understand how any such exception can be read into any of the acts of assembly relating to borough streets which are made a part of the State highway system. It might have been contended that such streets were impliedly excepted from the provisions of the act from necessity, namely, that the State highway

department was not a party to the franchise contracts and would, therefore, be unable to enforce its provisions or to remove or interfere with the facilities. Such a contention, however, is fully answered by the provisions of section 5 of the Act of May 31, 1911, P. L. 468, above quoted, giving to the department all the rights and remedies of the borough under such franchise agreements. The provisions of this section have been recognized and enforced by the Supreme Court in Commonwealth v. Newton Twp. et al., 276 Pa. 172; Cheltenham Twp. v. P. R. T. Co., 292 Pa. 384. We must conclude, therefore, that the mere existence of abandoned railway facilities in the street does not except such street from the provisions of the general State highway act or of the act specifically relating to Main Street in Yardley Borough.

The State further contends, according to its correspondence with the borough authorities, that by reason of the street railway franchise and facilities, it is not liable for the maintenance of that portion of the street, in this case the central portion, occupied by the facilities. It bases this contention on the provisions of section 10 of the State Highway Act, as amended, wherein it is provided that all reconstruction and maintenance of such streets "shall be of such width and type as may be determined by the Secretary of Highways." As to this contention it may be noted, first, that there is no such provision in the Act of June 1, 1933, P. L. 1402, relating to Main Street in the Borough of Yardley. In the second place, apparently it was not the purpose of the proviso of the general act to give the State highway department an arbitrary right to select separate portions of a highway of such a width and location as, in effect, to nullify the provisions of the act. It was not the intention of the legislature to permit the highway department to select those portions of a street which were most convenient or cheapest to maintain and allow the remainder, particularly the middle section of a highway, to be maintained by the borough. The Act of June 1, 1933, P. L. 1172, relating to this

street, makes the street generally and in its entirety a State highway. The most that the proviso in the general act just referred to can mean is that the State highway department in its sound discretion may determine how much of the entire width of the highway shall be constructed of a certain type and material, and how much thereof does not require the same type of construction. No doubt, under proper circumstances, the highway department might, for example, determine that in a certain 50-foot wide street, 20 feet thereof should be constructed of concrete and the remainder of gravel or some other cheap type of construction. Most assuredly it could not elect to construct two widely separated lanes of a generally traveled street, leaving the central portion in a dangerous condition and turning it over to the borough for maintenance. We are satisfied that under the provisions of the acts of assembly the entire street is placed under the jurisdiction and authority of the State highway department for construction and maintenance, although the general type and width of such improvement is in the discretion of the highway department. This conclusion is supported, and its operation made practicable, by the provisions of section 5 of the Act of May 31, 1911, P. L. 468. What would be the purpose of that provision if such public franchises relieved the defendant of maintenance?

Plaintiffs have cited McCracken v. Curwensville Borough, 309 Pa. 98, in support of their contention. We are unable to see how that case throws any light on the question involved in this case. That case raised a question of civil liability on the part of a borough for injuries sustained by the plaintiff by reason of obstructions, to wit, accumulated ice, on a borough street which the Department of Highways had elected to take over and maintain as a State highway. The court in its opinion recognizes the discretion of the State highway department to take over borough streets under the provisions of the Act of 1911. However, the occurrence out of which the suit arose

took place prior to the amendment of 1929 which first omitted the provision as to the discretion of the highway department. It throws no light whatever upon the amendment of section 10 by the Act of 1933, and still less upon the construction of the Act of June 1, 1933, relating to Main Street in the Borough of Yardley. The case of Brunacci et al. v. Plains Township, 315 Pa. 391, is likewise without value in determining this question. However, it does recognize the transfer of liability for maintenance from a municipality to the State highway department by reason of the creation of a State highway from a township road.

We are of the opinion that the Borough of Yardley has no authority or jurisdiction over the construction, improvement or repair of Main Street in that borough, and that consequently it has no right or authority to use borough funds for that purpose. The duty to repair and maintain this street being on the State highway department, the expenditure of borough funds for that purpose would constitute an unwarranted use thereof, and affect the local taxation without any justification. It is the duty of the borough officials to use borough funds only for lawful purposes, which do not include the performance of duties of the State highway department. For these reasons the writ of mandamus must be refused.

Now, July 22, 1935, the writ of peremptory mandamus is refused and the proceedings dismissed at the cost of the plaintiff.